**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC. and ABILIO JAMES ACOSTA,<br><br>             Plaintiffs,<br><br>             v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; JOHN F. KELLY, in his official capacity as Chief of Staff to the President of the United States; WILLIAM SHINE, in his official capacity as Deputy Chief of Staff to the President of the United States; SARAH HUCKABEE SANDERS, in her official capacity as Press Secretary to the President of the United States; the UNITED STATES SECRET SERVICE; RANDOLPH ALLES, in his official capacity as Director of the United States Secret Service; and JOHN DOE, Secret Service Agent, in his official Capacity,<br><br>             Defendants | CIVIL ACTION<br><br>NO. 1:18-CV-02610-TJK |

**BRIEF OF THE WHITE HOUSE CORRESPONDENTS' ASSOCIATION AS AMICUS CURIAE SUPPORTING PLAINTIFFS' MOTIONS FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**I.     INTEREST OF AMICUS CURIAE**

Amicus curiae is the White House Correspondents' Association ( "WHCA"), a nonprofit association incorporated in the District of Columbia, whose primary mission is to advocate for the newsgathering rights of the press on behalf of journalists who cover the White House and on behalf of the Americans who rely on the press to provide information about the activities of their elected officials.  Founded over 100 years ago, in February 1914, the WHCA has consistently and effectively worked to ensure that the men and women who gather and report the news from the White House have the ability to seek answers from powerful officials, up to

and including the President of the United States. The WHCA has 403 regular members who represent over 100 different print, television, radio, and online journalism outlets and 187 associate members.

The WHCA was founded on the belief, as expressed by the country's Founders and enshrined in the First Amendment, that an independent news media is vital to the health of the republic. The ability of the press to question vigorously and regularly elected officials and to report freely on the activities of these officials is fundamental to our democracy. When government officials—including the President of the United States here—attempt to restrict, curtail, intimidate, or silence the press in its news gathering activities, the rights of the people and the press, as guaranteed by the First Amendment, are infringed, and our democratic form of government is placed in jeopardy.

Plaintiffs in these proceedings, supported by Amicus Reporters Committee for Freedom of the Press, have outlined in compelling detail the constitutional violations visited caused by the President's actions. Amicus WHCA submits this brief to highlight the extent and breadth of the danger posed to all journalists, and to the American public, if the President's assertion of unbridled authority both to pick and choose but also to affirmatively exclude those journalists who cover him is permitted to stand. WHCA is filing now because the President set forth this extraordinary claim of discretion in yesterday's opposition papers, and the Court has announced that it intends to rule on the pending temporary restraining order motion at 3:00 p.m. today.

**II.     ARGUMENT**

The President of the United States maintains that he has absolute, unbridled discretion to decide who can report from inside the White House. Under the President's view of

the law, if he does not like the content of an article that a journalist writes about him, he can deny that journalist access to the White House.  If he does not like the viewpoint that a journalist expresses about him, he can deny that journalist access to the White House.  If he does not like a question that a journalist asks him, he can deny that journalist access to the White.  If he decides that a journalist's story is "fake news," he can deny that journalist access to the White House.  In fact, according to the President, if he alone considers a journalist a "bad" or a "rude" person, he can deny that journalist access to the White House.  And he can do so without providing that journalist with any process whatsoever.

The President's view of the law is wrong.  While he may have absolute discretion to exclude a member of the press from his Trump Tower residence, he does not have absolute discretion to exclude a member of the press from the White House.  After all, in the words of the National Park Service, "the White House stands as a symbol of democracy . . . serv[ing] not only as the seat of the executive branch of government of the United States of America, but also as an iconic place for civil discourse."  *See President's Park (White House)*, National Park Service, https://www.nps.gov/whho/index.htm.  The White House is the People's House, and the First Amendment does not permit the President to pick and choose which journalists do—and do not—cover him there.  *See The People's House | The White House: Inside Story*, PBS, https://www.pbs.org/video/white-house-inside-story-peoples-house/.  Far from it, the First Amendment requires a compelling government interest—not whim, prejudice, or dislike—for the President to strip a journalist of his or her ability to report from the White House.  WHCA urges the Court to grant CNN the relief that it seeks and, in doing so, to roundly reject the President's dangerous legal position.

### A. The President does not have discretion to pick and choose who reports on him from the White House.

The President's claim that he has absolute discretion to decide which journalists have access to the White House is foreclosed by *Sherrill v. Knight*, 569 F.2d 124 (D.C. Cir. 1977). In *Sherrill*, the court made clear that, regardless of whether the President has discretion to select those journalists to whom he grants interviews, a journalist's First Amendment rights *are* implicated by the denial of a White House press pass and a President therefore is *not* free to deny press passes as he or she sees fit. *See id.* at 129 (explaining that "arbitrary or content-based criteria for press pass issuance are prohibited under the first amendment" and then discussing other "first amendment considerations" raised by press pass denial); *id.* at 130 ("[T]he interest of a bona fide Washington correspondent in obtaining a White House press pass is protected by the first amendment."). As the D.C. Circuit put it, "White House press facilities having been made publicly available as a source of information for newsmen, the protection afforded newsgathering under the first amendment guarantee of freedom of the press requires that this access not be denied arbitrarily or for less than compelling reasons." *Id.* at 129 (internal citations omitted). Indeed, the court stressed, "[n]ot only newsmen and the publications for which they write, but also the public at large have an interest protected by the first amendment in assuring that restrictions on newsgathering be no more arduous than necessary, and that individual newsmen not be arbitrarily excluded from sources of information." *Id.* at 129-30. The court then unequivocally held that, "[g]iven these important first amendment rights implicated by refusal to grant White House press passes to bona fide Washington journalists, such refusal must be based on a compelling government interest." *Id.* at 130.

In addition to being at odds with binding First Amendment precedent, the President's legal position threatens the free flow of information about our elected officials that is

so crucial to the functioning of our democratic system.  As explained by Todd J. Gillman—a WHCA Board Member and Washington Bureau Chief for *The Dallas Morning News*—in his Declaration attached to CNN's injunction papers, "[a] hard pass is critical for anyone who reports regularly on the White House."  ECF No. 2-5, Gillman Decl. ¶ 9.  It is no exaggeration to say that, without one, a White House correspondent simply cannot do his or her job effectively.  For example, the ability of a White House correspondent to interact in real time with White House officials, including the President, as an important national emergency or crisis unfolds, and accurately report on such an event, would be impossible without a hard pass.  Moreover, Mr. Acosta was not just denied a hard pass—he was denied White House access altogether.

Beyond the impact that a denial of a hard pass has on the individual plaintiffs in this case, the Court cannot ignore the effect that a decision ratifying the President's sweeping claim of discretion would have on other journalists and news outlets that regularly cover the White House.  Simply stated, if the President were to have the absolute discretion to strip a correspondent of a hard pass, the chilling effect would be severe and the First Amendment protections afforded journalists to gather and report news on the activities on the President would be largely eviscerated.  White House correspondents would have to choose between avoiding reporting or questioning that could upset the President, on the one hand, and risking the loss of a hard pass—a requirement to do their job—on the other hand.  Forcing those who cover the President to make such an untenable choice is not something that the First Amendment can tolerate.  Nor can the First Amendment—or our democracy as a whole, for that matter—tolerate yielding to the President the power to effectively choose who does and who does not cover him.

**B.     A journalist must not be denied a White House hard pass without due process.**

Given how important a White House hard pass is to the work of a White House correspondent, and given the First Amendment interests that are implicated, a journalist must not be denied a hard pass without due process. *See Sherrill*, 569 F.2d at 130-31 ("This first amendment interest [in a White House press pass] undoubtedly qualifies as liberty which may not be denied without due process of law under the fifth amendment."); *id.* at 131 n.22 ("A related and perhaps equally compelling property interest [implicated by a White House press pass] may also be said to require the procedural protections of the fifth amendment."). To pass constitutional muster, the process provided must include, at a minimum, "notice of the factual bases for denial, an opportunity for the applicant to respond to these, and a final written statement of the reasons for denial." *Id.* at 130. This level of process is necessary to help ensure that any denial actually satisfies *Sherrill*'s substantive requirements—namely, that the denial is not "based on arbitrary or less than compelling reasons." *Id.*

But where, as here, the government's stated rationale for the denial of a hard pass is ever-shifting, any supposed process provided is essentially meaningless. *See* Jason Schwartz, *'The Government's Story Keeps Changing': CNN Seen as Likely to Prevail in White House Fight* (Nov. 13, 2018, 7:39 PM), https://www.politico.com/story/2018/11/13/cnn-white-house-lawsuit-jim-acosta-988160 (referring to White House's justifications for revocation as "shifting"). How can a White House correspondent "respond" to a "factual basis" that changes daily or is supported by an altered video? And in such a situation, how can a White House correspondent trust that any "final written statement of the reasons for denial" that he or she receives contains the actual reasons for the denial? Indeed, far from dispelling any concerns that the denial of Mr. Acosta's hard pass was "based on arbitrary or less than compelling reasons," the supposed

process that was provided here—again, a series of shifting explanations—only heightens those concerns.

### III. CONCLUSION

For all of these reasons, WHCA requests that the Court grant CNN the relief that it seeks and reject the President's dangerous legal position that he has absolute discretion to decide which journalists report from inside the White House.

Dated:  November 15, 2018

Respectfully submitted,

/s/ George A. Lehner
George A. Lehner (D.C. Bar. No. 281949)
PEPPER HAMILTON LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, D.C.  20005-2004
Phone: 202.220.1416
Fax: 202.220.1665
lehnerg@pepperlaw.com

Amy B. Ginensky (*pro hac vice* forthcoming)
Eli Segal (*pro hac vice* forthcoming)
Eric Merin (*pro hac vice* forthcoming)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
Phone: 215.981.4239
Fax: 215.981.4750
ginenskya@pepperlaw.com
segale@pepperlaw.com
merine@pepperlaw.com

*Counsel for White House Correspondents' Association*