# EXHIBIT 59

**Champion, Anne**

| | |
|---|---|
| **From:** | Boutrous Jr., Theodore J. |
| **Sent:** | Sunday, November 18, 2018 3:00 PM |
| **To:** | James.M.Burnham@usdoj.gov; Eric.Womack@usdoj.gov; Michael.H.Baer@usdoj.gov; Joseph.Borson@usdoj.gov |
| **Cc:** | Olson, Theodore B.; Lipshutz, Joshua S.; Champion, Anne |
| **Subject:** | Cable News Network, Inc. v. Trump, No. 18-cv-2610-TJK |
| **Attachments:** | Letter from T. Boutrous Jr. (11.18.2018).pdf |

Counsel:

We have received the November 16, 2018 letter from your clients, Bill Shine and Sarah Huckabee Sanders, informing our client, Jim Acosta, of their "preliminary decision" to suspend his hard pass despite the district court's ruling prohibiting that very action. To say the least, the letter is a disappointing response to the court's decision and our attempts to resolve the matter amicably. More fundamentally, though, it is further evidence of your clients' animus towards Mr. Acosta based on his work as CNN's chief White House correspondent.

Attached is Mr. Acosta's response to the letter. We trust that, after reviewing it, your clients will reconsider their preliminary decision and take no action against Mr. Acosta as a result of the President's November 7 press conference. In the interim, we no longer agree to postpone your Tuesday deadline for responding to our preliminary injunction motion. Moreover, unless you can confirm to our satisfaction that no action will be taken against Mr. Acosta, we will seek expedited discovery, including depositions, from all defendants on their intentions and their conduct.

As indicated in your clients' letter, we will expect the White House's final decision on this matter on or before 3:00 p.m. tomorrow. For now, Plaintiffs reserve all rights.

**Theodore J. Boutrous Jr.**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7804 • Fax +1 213.229.6804
TBoutrous@gibsondunn.com • www.gibsondunn.com

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Theodore J. Boutrous Jr.
Direct: +1 213.229.7804
Fax: +1 213.229.6804
TBoutrous@gibsondunn.com

November 18, 2018

Bill Shine
Assistant to the President
Deputy Chief of Staff for Communications
The White House
1600 Pennsylvania Avenue NW
Washington, D.C. 20500

Sarah Huckabee Sanders
Assistant to the President
White House Press Secretary
The White House
1600 Pennsylvania Avenue NW
Washington, D.C. 20500

Dear Mr. Shine and Ms. Sanders,

Our client, Jim Acosta, has received your November 16, 2018 letter informing him of your "preliminary decision" to suspend his hard pass. In the same letter, you state that the President concurs with your decision, and you invite Mr. Acosta to direct any response to you.

In short, Mr. Acosta contests your preliminary decision and submits that any action to suspend his hard pass based on the President's November 7, 2018 press conference would unquestionably violate his constitutional rights. Your letter, in fact, makes the point for us.

In your letter, you admit that "the White House does not have a written code of conduct for journalists participating in presidential press conferences." And, indeed, as President Trump stated after the district court's ruling in this very case, the Administration is "writing up rules and regulations" that will govern press conferences on a go-forward basis. Nevertheless, despite the admitted absence of such rules, you now seek to punish Mr. Acosta based on a *retroactive* application of unwritten "practices" among journalists covering the White House. This *ex post facto* application of vague, unarticulated standards to a journalist's access to the White House is not only different from your original explanations, but it is the same sort of due process violation that led the district court to issue a temporary restraining order against you on Friday.

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

November 18, 2018
Page 2

In truth, there are no so-called "widely understood practices" that would support your preliminary decision. At Wednesday's hearing, your counsel could have provided evidence of such norms, but they did not. And the vagaries referred to in your letter plainly do not constitute the "publish[ed] … explicit and meaningful standards" required under *Sherrill v. Knight*, 569 F.2d 124 (D.C. Cir. 1977), and other binding case law. In addition to being unwritten, they are precisely the type of vague and subjective standards that are impermissible in the First Amendment context because they provide no protection against content- and viewpoint-discrimination. In this way, your attempt to concoct retroactive and amorphous standards is actually *more* evidence of viewpoint discrimination against Mr. Acosta. *See* Ruling Tr. 11:6-8 (recognizing government's prior reliance on "likely untrue" justifications based on "evidence of questionable veracity").

Moreover, the factual basis for your preliminary decision is fundamentally flawed. Not only is your description of the exchange between Mr. Acosta and President Trump inaccurate as a review of the video demonstrates (Exhibit 27 to Plaintiffs' motion), but even a cursory review of the transcript of the November 7 conference demonstrates that *many* reporters asked multiple questions and continued to interject even after the President had moved to a new questioner, all without consequence. As far as we are aware, no reporter has ever had their hard pass taken away based on such commonplace conduct or for any other reason. Nor would a White House reporter have had any notice that violating these retroactive and concocted "practices" would result in revocation or suspension of a hard pass.

Finally, you provide no explanation as to why revoking Mr. Acosta's hard pass is a sufficiently tailored restriction of his First Amendment liberty interests where, as noted by the district court on Friday, several less severe restrictions are available. *Sherrill* requires "compelling" reasons for revoking a hard pass, and your letter does not articulate any such compelling reason. Instead, it again misstates the facts and shifts the rationale. It would be the essence of a due process violation for biased decision-makers—who previously deprived a person of his liberty interest in violation of due process and have repeatedly altered their supposed reasons for doing so—to again deprive the same citizen of his liberty interest for the same alleged conduct after applying a newly constituted yet retroactive "process" now apparently being used.

For these and other reasons, your preliminary decision is inconsistent with both the letter and the spirit of the district court's ruling on Friday. As the court held, *Sherrill*, squarely governs this case and protects, under the Due Process Clause, Mr. Acosta's "First Amendment liberty interest in a White House press pass." Ruling Tr. at 6:13-14, 7:19-20. In *Sherrill*, the D.C. Circuit held that due process in this context requires the government "to articulate and publish an explicit and meaningful standard" governing the denial of White House press passes, in advance of any such deprivation. *Sherrill*, 569 F.2d at 131. That is

November 18, 2018
Page 3

consistent with longstanding U.S. Supreme Court precedent requiring clear and objectively administrable standards, particularly where the First Amendment is concerned: "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Studios, Inc.*, 567 U.S. 239, 253 (2012). And "[w]hen speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Id.* at 253-54. Put simply, the White House's illegal reaction after the November 7 press conference cannot be made legal now by applying an after-the-fact concocted process.

Separately, we wonder if you are aware that, after Friday's hearing, CNN's chief counsel suggested to your counsel that the parties use the 14-day TRO period to work with the White House and White House Correspondents Association to formulate agreed-upon protocols for future press conferences. To CNN and Mr. Acosta—and we suspect to most Americans—that would be a more productive path than continuing to violate Mr. Acosta's constitutional rights with explanations that simply aren't true.

Sincerely,

_____
Theodore J. Boutrous Jr.